Peter Hans Cooper, Esq. (PHC4714)
**CILENTI & COOPER, PLLC**
60 East 42nd Street – 40th Floor
New York, New York 10165
T. (212) 209-3933
F. (212) 209-7102
pcooper@jcpclaw.com
*Co-counsel for Plaintiff*

Ann Margaret O'Neill, Esq.
BBO# 554021
**MURPHY HESSE TOOMEY & LEHANE, LLP**
300 Crown Colony Drive – Suite 410
Quincy, Massachusetts 02169-9126
T. (617) 479-5000
F. (617) 479-6469
noneill@mhtl.com
*Co-counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL J. OWENS, | Case No.: 22 CV 7042 |
| Plaintiff, | **COMPLAINT** |
| - against - | ECF CASE |
| SMART SOURCE ENTERPRISES, LLC, SMART SOURCE LLC, and THOMAS D'AGOSTINO, individually MARK HENSON, individually, and SCOTT RICH, individually, | **Jury Trial Demand** |
| Defendants. | |

Plaintiff, Daniel J. Owens ("Plaintiff"), by and through his undersigned attorneys, Cilenti & Cooper, PLLC, and Murphy Hesse Toomey & Lehane, LLP, respectfully files this Complaint against Defendants, Smart Source Enterprises, LLC and Smart Source LLC (collectively hereinafter "Smart Source"), and Thomas D'Agostino, Mark Henson, and Scott Rich, individually, (all defendants, collectively referred to herein as the "Defendants"), and states as follows:

1

## INTRODUCTION

1. Plaintiff alleges that he is entitled to recover from the Defendants, pursuant to the Massachusetts Wage Act and an Employment Agreement between Plaintiff and Defendants, (1) payment of commissions; and (2) associated damages, interest and legal fees.

2. Smart Source's actions in refusing to pay the commissions it owes to Plaintiff violate the provisions of the Massachusetts Wage Act, and are in breach of an Employment Agreement entered into and then existing between Plaintiff and Smart Source.

3. Smart Source, in refusing to pay the commissions owed, is acting in bad faith; moreover, Smart Source retaliated against Plaintiff when he raised the issue regarding non-payment of commissions.

## JURISDICTION AND VENUE

4. The District Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), (c)(1).

5. Venue properly lies in the Southern District of New York in accordance with 28 U.S.C § 1391(b)(3), (c)(2), and the forum selection clause contained in the Employment Agreement entered into between Plaintiff and Defendants.

## PARTIES

6. Plaintiff, Daniel J. Owens, is an adult resident of the State of New Hampshire.

7. At all times relevant to this action, Plaintiff was employed by Smart Source as a sales representative pursuant to an Employment Agreement entered into between Plaintiff and Defendants, attached as Exhibit 1 to this Complaint (referred to herein as the "Employment Agreement.")

8. Plaintiff has been and is a dedicated and hard-working employee of Smart Source, who has consistently been recognized for his valuable contributions to Smart Source's success.

2

9. At all times relevant to this action, Plaintiff worked at Smart Source's Waltham, Massachusetts office, which later relocated to Westborough, Massachusetts.

10. At all times relevant to this action, Plaintiff primarily serviced and continues to service Smart Source's customers in Massachusetts.

11. Defendant, Smart Source Enterprises, LLC, is a business entity incorporated in the state of Georgia, with a principal office address at 7270 McGinnis Ferry Rd., Suwanee, GA 30024.

12. Smart Source Enterprises, LLC conducts business in the State of New York.

13. Upon information and belief, Smart Source LLC is a Delaware limited liability company with its principal place of business at 7270 McGinnis Ferry Rd., Suwanee, GA 30024.

14. Smart Source LLC conducts business in the State of New York.

15. Upon information and belief, individual defendant Thomas D'Agostino is an adult resident of the State of New York, and is the President and Chief Executive Officer of Smart Source.

16. Defendant Mark Henson is the Senior Vice President Business Development Operations of Smart Source, and upon information and belief, is an adult resident of the State of Nevada, and conducts business on behalf of Smart Source in the State of New York.

17. Defendant Scott Rich is the Senior Vice President of Sales of Smart Source, and upon information and belief is an adult resident of the State of Georgia, and conducts business on behalf of Smart Source in the State of New York.

18. At all times relevant to this action, Defendant Thomas D'Agostino, was a statutory employer of Plaintiff, within the meaning of the Massachusetts Wage Act.

19. At all times relevant to this action, Defendant Mark Henson, was a statutory employer of Plaintiff, within the meaning of the Massachusetts Wage Act.

docs\OWE001\00002\1296804.v1-8/9/22

20. At all times relevant to this action, Defendant Scott Rich, was a statutory employer of Plaintiff, within the meaning of the Massachusetts Wage Act.

## PROCEDURAL HISTORY

21. Pursuant to MGL c. 149, § 150, the Massachusetts Attorney General's office has assented to the commencement of this action.

## FACTS

22. On or about October 7, 2016, Plaintiff and Defendants entered into the Employment Agreement, attached to this complaint as Exhibit 1.

23. Smart Source is a company that sells print and promotional products and related services.

24. In his role of sales representative, Plaintiff sold print, promotional, and marketing products to businesses.

25. In accordance with the Employee Compensation plan, attached as Exhibit A to the Employment Agreement, for Straight Ship Orders, Plaintiff earned a forty percent (40%) commission upon collection of payment from the customer. This commission is calculated as forty percent (40%) of Smart Source's gross profit, or "GP," on the order.

26. Prior to the onset of the COVID-19 global pandemic, Plaintiff had developed and cultivated the UMass Memorial Medical Center ("UMass") customer account over the previous five (5) years.

27. At all times relevant to this action, Plaintiff was the exclusive Smart Source sales representative responsible for the UMass account.

28. With the onset of the COVID-19 pandemic, UMass faced a critical need for Personal Protective Equipment ("PPE"). At the time, PPE was extremely difficult to source as there were supply chain disruptions and a nation-wide shortage of such products.

29. Beginning in March 2020, Plaintiff identified a source for PPE and sold significant quantities of such products to UMass.

30. At the onset of the COVID-19 global pandemic in March 2020, Plaintiff's established relationship with UMass and his initiative reaped enormous benefits for Smart Source as he located and sourced PPE for sale to Smart Source's customers, including UMass.

31. UMass prepaid each PPE order promptly after each order was placed.

32. In accordance with the Employee Compensation Plan attached to the Employment Agreement, which provides that "[c]ommissions are earned upon collection," Mr. Owens earned his commissions for the UMass orders at the time UMass paid for the products.

33. The UMass orders were Straight Ship Orders. As such, the contracted commission rate owed to Plaintiff was forty percent (40%) of Smart Source's gross profit.

34. Smart Source recognized Plaintiff's achievements in an April 7, 2020 email to the entire sales organization from Scott Rich, Senior Vice President of Sales, regarding March 2020 sales performance. The email singled out Plaintiff congratulating him on his "meteoric feat!!" of "lead[ing] the pack with a whopping $428,632 in [gross profit] …" A copy of the April 7, 2020 email is attached hereto as Exhibit 2.

35. On April 22, 2020, Mark Henson, Senior Vice President Business Development Operations, emailed the entire Smart Source sales organization, thanking the top sales people. Again, he singled out Plaintiff's exemplary success, stating:

> In our town hall we challenged our sales force to find a way through this and you have. Dan Owens showed … he can lead the way in this tough NE market!

A copy of the April 22, 2020 email from Mark Henson to Sales, All Divisions, is attached hereto as Exhibit 3.

36. In accordance with the commission rate established by the Employee

Compensation plan attached to Plaintiff's Employment Agreement, Smart Source calculated Plaintiff's commission rate at forty percent (40%) of the gross profit for the UMass orders in March and April 2020, with the exception of an order placed on April 30, 2020.

37. However, for April 2020, Smart Source failed to pay Plaintiff approximately seventy-two thousand dollars ($72,000.00) on Straight Ship Order commissions for products sold to UMass. It was only after Plaintiff brought this failure to make payment to Smart Source's attention that Smart Source remitted the payment to Plaintiff. Smart Source's payment of the April commissions was one (1) month late, on June 30, 2020. Smart Source claimed that a deficit amount had been deducted twice in error, notwithstanding that Plaintiff had satisfied the outstanding deficit in full as of March 2020.

38. Smart Source has failed to properly compensate Plaintiff for five (5) UMass prepaid orders placed on April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020. Commissions owed to Plaintiff on those orders amounted to approximately one hundred and thirty-five thousand dollars ($135,000.00) at the forty percent (40%) commission rate. Since May 2020, Smart Source has paid Plaintiff approximately seventeen thousand dollars ($17,000.00) of the commissions owed, resulting in approximately one hundred and eighteen thousand dollars ($118,000.00) in commissions that were earned and have never been paid to Plaintiff.

39. When Plaintiff became aware of the underpayments, he emailed Scott Rich, Senior Vice President of Sales, on May 8, 2020. A copy of Plaintiff's email, asking for Mr. Rich's assistance, is attached hereto as Exhibit 4.

40. Scott Rich forwarded Plaintiff's May 8, 2020 email to Mark Henson, Senior Vice President Business Development Operations. After attempting to speak by telephone, Mr. Henson responded to Plaintiff's email stating "It's your customer do as you wish." A copy of Mr. Henson's

May 8, 2020 email to Plaintiff, copying Scott Rich, is attached hereto as Exhibit 5.

41. On May 12, 2020, Plaintiff again emailed Scott Rich informing him that the commission percentage for several of his orders was incorrect and requesting corrections to the amounts paid. Plaintiff had only been paid significantly less than the commission rate of forty percent (40%) to which he was entitled. A copy of Plaintiff's May 12, 2020 email to Scott Rich is attached hereto as Exhibit 6.

42. On May 14, 2020, Scott Rich responded to Plaintiff's email and informed Plaintiff that he was being removed from the UMass account and his commission rate would be reduced from a forty percent (40%) commission to a five percent (5%) "finder's fee." A copy of Scott Rich's May 14, 2020 email to Plaintiff is attached hereto as Exhibit 7.

43. Neither the Employment Agreement nor the Employee Compensation plan contain any reference to a so-called "finder's fee."

44. For June 2020, Smart Source inappropriately reduced Plaintiff's commissions when it again charged him for a deficit he did not owe. This represented the third (3rd) time Smart Source deducted a purported "deficit" from Plaintiff's compensation. On information and belief, the improper deduction for the same deficit for the third time resulted in the late payment of approximately fourteen thousand dollars ($14,000.00) in commissions due Plaintiff.

45. On July 31, 2020, Plaintiff again emailed Scott Rich regarding Smart Source's failure to pay him the proper commission rate on the UMass prepaid orders from April and May, 2020, referenced herein in ¶38. Plaintiff's July 31, 2020 email to Mr. Rich is attached hereto as Exhibit 8. Based on the applicable contracted forty percent (40%) commission rate, Plaintiff calculated a commission amount owed of approximately one hundred fifty thousand dollars ($150,000.00) at that time.

46. Scott Rich responded to Plaintiff's email, stating that based on his prior email from May 14, 2020 (Exhibit 7), "you will be receiving 5% commission on GP generated from UMass." A copy of Scott Rich's July 31, 2020 email to Plaintiff is attached hereto as Exhibit 9.

47. Smart Source improperly and illegally underpaid Plaintiff's commissions at a rate of five percent (5%), which amounted to approximately seventeen thousand dollars ($17,000.00), *versus* the contracted forty percent (40%) which Plaintiff was owed, which amounted to approximately one hundred and thirty-five thousand dollars ($135,000.00).

48. Smart Source failed to pay Plaintiff a five percent (5%) commission for UMass orders placed after May 14, 2020. From June 2020 through January 2021, Smart Source paid a two percent (2%) commission for UMass orders, resulting in an approximately twenty-nine thousand dollar ($29,000.00) underpayment to Plaintiff. Smart Source did not pay the balance of the June 2020 through January 2021 five percent (5%) commission amounts until March 2021, resulting in the untimely payments of those commissions.

49. In February 2021, Smart Source late paid Plaintiff approximately five thousand five hundred dollars ($5,500.00) in commissions earned by him for the time period August 2019 through December 2020. The payment of such commissions was untimely.

50. On February 1, 2022, notwithstanding it owed Plaintiff approximately one hundred eighteen thousand dollars ($118,000) in unpaid commissions as well as damages on multiple late commission payments, Smart Source notified Plaintiff that it would be reducing his monthly compensation from nine thousand dollars ($9,000) to three thousand five hundred dollars ($3,500), a sixty-one percent (61%) decrease. The February 1, 2022 email from Scott Rich to Plaintiff reducing his compensation is attached hereto as Exhibit 10.

51. On February 10, 2022, Plaintiff responded to Scott Rich's February 1, 2022 email,

stating that based on the money owed to him by Smart Source he did not consent to deductions from his pay. Nevertheless, Smart Source did in fact reduce Plaintiff's pay by sixty-one percent (61%). Plaintiff's February 10, 2022 email to Scott Rich is attached hereto as Exhibit 11.

52. Smart Source's May Profit and Profit YTD numbers for 2022 for Plaintiff were inaccurate. While Plaintiff's May 2022 Sales were fifty-four thousand nine hundred ninety-nine dollars and fifty-three cents ($54,999.53), Smart Source recorded his May Profit as a negative forty-two thousand seven hundred eight dollars and nine cents ($42,708.09). Similarly, while his year-to-date (YTD) sales were one hundred and ninety-three thousand five hundred ninety-six dollars and forty-eights cents ($193,596.48), Smart Source recorded only thirty dollars and nine cents ($30.09).

53. In response to Plaintiff's inquiry regarding the incorrect monthly and year-to-date profits, Scott Rich explained that the reduced numbers resulted from a loss allegedly experienced by Smart Source when it paid for nitrile gloves ordered by UMass which were never delivered by the vendor. According to Smart Source, Plaintiff was responsible for a portion of the "square up" of the loss. Plaintiff was never paid any commissions for the UMass order for nitrile gloves which resulted in an alleged loss for Smart Source.

54. Smart Source calculated Plaintiff's portion of the "square up" as five percent (5%) of the cost of the loss it allegedly experienced based on Plaintiff's five percent (5%) commission rate.

55. Neither the Employment Agreement nor the Employee Compensation plan contain any reference to a so-called "square-up."

56. First, Smart Source computed Plaintiff's five percent (5%) "square up" as twenty-three thousand eight hundred dollars ($23,800.00), using a cost of four hundred seventy-six

9

thousand eight dollars ($476,008.00), which Smart Source had inflated by one hundred fifty-nine thousand two hundred eight dollars ($159,208.00). It was only after Plaintiff brought the inflated cost amount to Scott Rich's attention that he recalculated the five percent (5%) "square up" on the purported loss of three hundred sixteen thousand eight hundred dollars ($316,800.00) allegedly incurred by Smart Source. Without any explanation regarding the erroneous one hundred fifty-nine thousand two hundred eight dollars ($159,208.00) improperly added to the alleged cost, Scott Rich advised Plaintiff he was responsible for a payment of fifteen thousand eight hundred dollars ($15,800.00), which could be deducted from his compensation in twelve (12) monthly installments of one thousand three hundred sixteen dollars and sixty-seven cents ($1316.67). Smart Source used such deductions to further improperly and illegally reduce Plaintiff's monthly compensation.

## COUNT I
**Failure to pay wages owed in violation of MGL c. 149, §148 against Smart Source**

57. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 56 of this Complaint, as if fully set forth herein.

58. The commissions due Plaintiff on the April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020 UMass orders in the amount of approximately one hundred eighteen thousand dollars ($118,000.00), are wages under the Massachusetts Wage Act.

59. Smart Source's failure to pay such wages constitutes a violation of the Massachusetts Wage Act, in particular MGL c. 149, §148, which requires timely payment of wages owed.

60. Because Smart Source failed to pay Plaintiff wages owed, it is liable to him for the unpaid commissions, treble damages for the unpaid commissions, other damages incurred by Plaintiff, the costs of the litigation, and attorneys' fees. MGL c. 149, §150. Smart Source is also subject to fines and civil citation provisions established in MGL c. 149, §27C.

10

## COUNT II

### Failure to pay wages owed in violation of MGL c. 149, § 148
### against Thomas D'Agostino, Mark Henson and Scott Rich

61. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 60 of this Complaint, as if fully set forth herein.

62. Defendants Thomas D'Agostino, Mark Henson, and Scott Rich are each deemed to be the employer of Plaintiff within the meaning of the Massachusetts Wage Act.

63. As such, they are each individually liable for the commissions due Plaintiff on the April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020 UMass orders in the amount of approximately one hundred eighteen thousand dollars ($118,000.00).

64. Based on the failure to pay Plaintiff wages owed, Thomas D'Agostino, Mark Henson, and Scott Rich are each liable to Plaintiff for the unpaid commissions, treble damages for the unpaid commissions, other damages incurred by Plaintiff, the costs of the litigation, and attorneys' fees.

## COUNT III

### Retaliation in violation of MGL c. 149, §148A against Smart Source

65. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 64 of this Complaint, as if fully set forth herein.

66. After Plaintiff complained to Smart Source on May 12, 2020 about its failure to pay him commissions due and payable to him for the April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020 UMass orders, two (2) days later on May 14, 2020, Smart Source stripped Plaintiff of the Umass account and attempted to reduce his commission rate from forty percent (40%) to five percent (5%).

67. Such actions by Smart Source constitute retaliation in violation of MGL c. 149,

§148A.

68. Because Smart Source retaliated against Plaintiff, it is liable to him for the unpaid commissions, treble damages for the unpaid commissions, other damages incurred by Plaintiff, the costs of the litigation, and attorneys' fees. MGL c. 149, §150. Smart Source is also subject to fines and civil citation provisions established in MGL c. 149, §27C.

## COUNT IV
### Retaliation in violation of MGL c. 149, §148A against Thomas D'Agostino, Mark Henson and Scott Rich

69. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 68 of this Complaint, as if fully set forth herein.

70. Defendants Thomas D'Agostino, Mark Henson, and Scott Rich are each deemed to be the employer of Plaintiff within the meaning of the Massachusetts Wage Act.

71. As such, they are each individually liable for the retaliation against Plaintiff when he was stripped of the Umass account and his commission rate was reduced from forty percent (40%) to five percent (5%) after Plaintiff complained to Mark Henson and Scott Rich about Smart Source's failure to pay commissions due and payable to him on the April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020 Umass orders in the amount of approximately one hundred and eighteen thousand dollars ($118,000.00).

72. Such actions by Defendants Thomas D'Agostino, Mark Henson, and Scott Rich constitute retaliation in violation of MGL c. 149, §148A.

73. Because Defendants Thomas D'Agostino, Mark Henson, and Scott Rich retaliated against Plaintiff, they are each liable to him for the unpaid commissions, treble damages for the unpaid commissions, other damages incurred by Plaintiff, the costs of the litigation, and attorneys' fees.

## COUNT V

### Late payment of wages in violation of MGL c. 149, §148 against Smart Source

74. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 73 of this Complaint, as if fully set forth herein.

75. The commissions due Plaintiff from June 2020 through January 2021, in the amount of approximately twenty-nine thousand dollars ($29,000) were wages under the Massachusetts Wage Act. Smart Source paid such commissions late to Plaintiff.

76. The commissions due Plaintiff from August 2019 through December 2020 in the amount of approximately five thousand five hundred dollars ($5,500.00) were wages under the Massachusetts Wage Act. Smart Source paid such commissions late to Plaintiff.

77. The improper reduction of Plaintiff's compensation on two (2) occasions for April 2020 and June 2020 for deficit amounts that had already been paid back to Smart Source deprived Plaintiff of compensation earned, which compensation was then paid on an untimely basis. The amount of compensation which Smart Source paid late to Plaintiff was approximately seventy-two thousand dollars ($72,000.00) for April 2020 and at least fourteen thousand dollars ($14,000) for June 2020, for a total of approximately eighty-six thousand dollars ($86,000.00).

78. Smart Source's late payment of wages due Mr. Owens in the total amount of approximately one hundred twenty thousand five hundred dollars ($120,500) violates MGL c. 149, §148, which requires payment within six (6) days of the termination of the pay period during which the wages were earned.

79. Because Smart Source failed to pay Mr. Owens on a timely basis, it is liable to him for treble damages for the unpaid commissions, other damages incurred by Mr. Owens, the costs of the litigation, and attorneys' fees. MGL c. 149, §150. Smart Source is also subject to fines and civil citation provisions established in MGL c. 149, §27C.

## COUNT VI

### Late payment of wages in violation of MGL c. 149, §148 against Thomas D'Agostino, Mark Henson and Scott Rich

80. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 79 of this Complaint, as if fully set forth herein.

81. Defendants Thomas D'Agostino, Mark Henson, and Scott Rich are each deemed to

13

be the employer of Plaintiff within the meaning of the Massachusetts Wage Act.

82. As such, they are each individually liable for Smart Source's late payment of wages due Plaintiff in the amount of approximately one hundred twenty thousand five hundred dollars ($120,500) in violation of MGL c. 149, §148, which requires payment within six (6) days of the termination of the pay period during which the wages were earned.

83. Because Smart Source failed to pay Plaintiff on a timely basis, Defendants Thomas D'Agostino, Mark Henson and Scott Rich are each liable to him for treble damages for the unpaid commissions, other damages incurred by Plaintiff, the costs of the litigation, and attorneys' fees.

## COUNT VII
### Unlawful deductions in violation of MGL c. 149, §148 against Smart Source

84. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 83 of this Complaint, as if fully set forth herein.

85. The deductions from Plaintiff's compensation amounting to a total of fifteen thousand eight hundred dollars ($15,800) based on a loss allegedly sustained by Smart Source, are unlawful deductions from earned wages in violation of MGL c. 149, §148.

86. Smart Source is liable to Plaintiff in the amount of any such unlawful deductions, treble damages for the unlawful deductions, other damages incurred by Plaintiff, the costs of the litigation, and attorneys' fees. MGL c. 149, §150. Smart Source is also subject to fines and civil citation provisions established in MGL c. 149, §27C.

## Count VIII
### Unlawful deductions in violation of MGL c. 149, §148
### against Thomas D'Agostino, Mark Henson, and Scott Rich

87. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 86 of this Complaint, as if fully set forth herein.

88. Defendants Thomas D'Agostino, Mark Henson, and Scott Rich are each deemed to be the employer of Plaintiff within the meaning of the Massachusetts Wage Act.

89. As such, they are each individually liable for the unlawful deductions from Plaintiff's compensation amounting to a total of fifteen thousand eight hundred dollars ($15,800) based on an alleged loss sustained by Smart Source in violation of MGL c. 149, §148.

90. Based on the unlawful deductions, Defendants Thomas D'Agostino, Mark Henson, and Scott Rich are individually liable to Plaintiff in the amount of any such unlawful deductions, treble damages for the unlawful deductions, other damages incurred by Plaintiff, the costs of the litigation, and attorneys' fees.

## COUNT IX

**Breach of contract against Smart Source – failure to pay commissions owed**

91. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 90 of this Complaint, as if fully set forth herein.

92. Plaintiff's Employment Agreement provides that "Commissions are earned upon collection," and that the commission rate for Straight Ship Orders shall be forty percent (40%). The commission rate is a percentage of gross profit, "GP."

93. All of the orders at issue in this Complaint were Straight Ship prepaid orders placed by Umass through Plaintiff herein.  Accordingly, Smart Source collected Umass' payments for the orders promptly after placement of the orders by Umass, and Plaintiff's commissions were due and payable upon collection of the payments by Umass.

94. Upon payment by Umass, Plaintiff earned a forty percent (40%) of gross product commission rate.

95. Smart Source's failure to pay Plaintiff the forty percent (40%) commission on the April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020 Umass orders

15

breached the Employment Agreement between Plaintiff and Smart Source.

96. Smart Source's failure to pay Plaintiff the commission it had purportedly reduced from forty percent (40%) to five percent (5%) from June 2020 through January 2021 breached the Employment Agreement between Plaintiff and Smart Source.

97. Smart Source's failure to pay Plaintiff the commissions owed to him from August 2019 through December 2020 breached the Employment Agreement between Plaintiff and Smart Source.

98. The late payment of commissions that resulted from Smart Source improperly deducting the same deficit from Plaintiff's compensation on two (2) occasions for the April 2020 commissions and the June 2020 commissions breached the Employment Agreement between Plaintiff and Smart Source.

99. As such, Smart Source is liable to Mr. Owens (a) for the amount of commissions not paid on the April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020 for Umass orders; (b) for the late payment of a portion of the Umass commissions from June 2020 through January 2021; (c) for the late payment of commissions earned from August 2019 through December 2020; and (d) for the late payment of commissions that resulted from Smart Source improperly deducting the same deficit from Mr. Owens' compensation on two (2) occasions for the April 2020 commissions and the June 2020 commissions.

## COUNT X

**Breach of contract against Smart Source –
unlawful deductions from Plaintiff's pay to "square up" alleged Smart Source losses**

100. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

101. Plaintiff was not paid any commissions on the nitrile glove order that resulted in an

alleged loss to Smart Source.

102. Smart Source is improperly and illegally charging Plaintiff five percent (5%) of the loss allegedly incurred by Smart Source based on his commission rate to "square up" the loss.

103. The Employment Agreement between Plaintiff and Smart Source does not contain any so-called "square-up" provision.

104. The Employment Agreement between Plaintiff and Smart Source provides that "This is the entire agreement between the parties … and may be changed only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension of discharge is sought." *See* Exhibit 1, Employment Agreement, ¶14.

105. Charging Plaintiff for five percent (5%) of the loss allegedly incurred by Smart Source to "square up" the loss is a breach of the Employment Agreement between Plaintiff and Smart Source.

## COUNT XI
**Breach of the Implied Covenant of Good Faith and Fair Dealing against Smart Source**

106. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs 1 through 105 of this Complaint, as if fully set forth herein.

107. Plaintiff earned the commissions on the April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020 Umass orders.

108. Smart Source willfully, intentionally, and in violation of the Massachusetts Wage Act and in breach of the Employment Agreement between Plaintiff and Smart Source, deprived Plaintiff of the full amount of the commissions due and payable to him.

109. Not only did Smart Source fail to pay Plaintiff commissions he had earned, but they removed him from the Umass account and notified him they were reducing his commission rate from forty percent (40%) to five percent (5%).

110. By unlawfully depriving Plaintiff of earned compensation, Smart Source unjustly retained commissions earned and breached the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Daniel J. Owens, respectfully requests that this Honorable Court enter a judgment against Defendants, Smart Source Enterprises, LLC, Smart Source LLC, Thomas D'Agostino, Mark Henson, and Scott Rich, and provide the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the Massachusetts Wage Act;

b. Permanently enjoin Defendants from further unlawful conduct;

c. Award damages for unpaid commissions, to include treble damages, other damages, including emotional distress damages, the costs of litigation and attorneys' fees, for violation of MGL c. 149, §148;

d. Award damages for retaliation after Plaintiff complained about unpaid commissions, to include treble damages, other damages, including emotional distress damages, the costs of litigation and attorneys' fees, for violation of MGL c. 149, §148A;

e. Award damages for late payment of commissions, to include treble damages, other damages, including emotional distress damages, the costs of litigation and attorneys' fees, for violation of MGL c. 149, §148;

f. Award damages for unlawful deductions from wages, to include treble damages, other damages, including emotional distress damages, the costs of litigation and attorneys' fees, for violation of MGL c. 149, § 148;

g. Award damages for breach of the Employment Agreement based on the failure to pay the commissions earned on the April 30, 2020, May 4, 2020, May 5, 2020, May 11, 2020, and May 12, 2020 Umass orders; for the late payment of a portion of the Umass commissions from June 2020 through January 2021; for the late payment of commissions earned from August 2019 through December 2020; and for the late payment of commissions that resulted from Smart Source improperly deducting the same deficit from Plaintiff's compensation on two (2) occasions for the April 2020 commissions and the June 2020 commissions;

h. Award damages for breach of the Employment Agreement based on charging five percent (5%) of a loss purportedly incurred by Smart Source to "square up" such purported loss;

    i.    Award damages for breach of the implied covenant of good faith and fair dealing;

    j.    Award treble damages based on the amount of unpaid commissions, late payment of commissions, and unlawful deductions from wages;

    k.    Award damages for emotional distress experienced as a result of Defendants' willful and malicious actions;

    l.    Award attorneys' fees and costs pursuant to MGL c. 149, §150;

    m.    Award prejudgment and post-judgment interest; and

    n.    Grant such other and different relief as this Court determines to be just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all claims and issues so triable.

**DATED** this 18th day of August, 2022.

Respectfully submitted,

CILENTI & COOPER, PLLC
*Co-counsel for Plaintiff*
60 East 42nd Street – 40th Floor
New York, New York 10165
T. (212) 209-3933
F. (212) 209-7102
E-mail: pcooper@jcpclaw.com

By:    /s/ Peter Hans Cooper
        Peter Hans Cooper, Esq. (PHC 4714)

MURPHY HESSE TOOMEY & LEHANE, LLP
*Co-counsel for Plaintiff*
300 Crown Colony Drive – Suite 410
Quincy, Massachusetts 02169-9126
T. (617) 479-5000
F. (617) 479-6469
E-mail: noneill@mhtl.com

By:    /s/ Ann Margaret O'Neill
        Ann Margaret O'Neill, Esq. (BBO# 554021)